IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 97–cv–01068–EWN

FLOYD DAVID SLUSHER,

      Petitioner,

v.

ROBERT FURLONG, Warden, and
THE ATTORNEY GENERAL OF COLORADO,

      Respondents.

---

**ORDER AND MEMORANDUM OF DECISION**

---

Petitioner Floyd David Slusher seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2006). Specifically, Petitioner challenges the constitutionality of: (1) his indeterminate sentence of one-day-to-life imposed on him in 1977 under the provisions of the Colorado Sex Offenders Act ("CSOA"), Colo. Rev. Stat. § 18–1.3–901 *et seq.* (2006); and (2) his continuing detention under the sentence without periodic judicial review of the circumstances justifying his confinement. This matter is before the court on Petitioner's "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody," filed June 20, 1997. Jurisdiction is premised upon 28 U.S.C. § 2254 (2006).

1

## FACTS

In 1977, Petitioner pled guilty to one count of sexual assault on a child and was sentenced to an indeterminate, one-day-to-life term of imprisonment under the CSOA. (Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody at 2 [filed June 20, 1997] [hereinafter "Petition"].) Petitioner does not contest his guilt of this offense. (Br. in Supp. of Petition for a Writ of Habeas Corpus at 1 [filed Nov. 3, 2005] [hereinafter "Pet'r's Br."].) The CSOA, which applies only "to persons sentenced for offenses committed prior to November 1, 1998," affords state district courts the discretion to sentence a sex offender to imprisonment or to order that the offender be committed to the custody of the Colorado Department of Corrections "for an indeterminate term having a minimum of one day and a maximum of his or her natural life." Colo. Rev. Stat. §§ 18–1.3–902, 18–1.3–904 (2006). A court may sentence a defendant to an indeterminate term only if it "finds the defendant is a threat to the public." *People v. Sanchez*, 520 P.2d 751, 753 (Colo. 1974). If a court opts to impose an indeterminate sentence, "it must do so in lieu of the sentence otherwise provided by law." *Sanchez*, 520 P.2d at 753 (citation and internal quotation marks omitted). As is relevant in the instant case, the maximum sentence for the class four felony of sexual assault on a child is ten years in prison. *See* Colo. Rev. Stat. § 18–3–405 (2006).

In 1982, Petitioner filed a post-conviction motion in Boulder County District Court, in which he raised the periodic judicial review equal protection claim presently before this court. (Petition at 3, 6b; *see also* Respondents' Br. in Resp. to Pet'r's Br. in Supp. of Petition for Writ of Habeas Corpus at 8 [filed Dec. 15, 2005] [hereinafter "Resp'ts' Resp."].) The court denied

2

Petitioner's motion. (Petition at 3.) Petitioner appealed, and in 1985, the Colorado Supreme Court refused to address the merits of Petitioner's equal protection claim and upheld the trial court's decision. *People v. Kibel*, 701 P.2d 37 (Colo. 1985). The court reasoned that because Petitioner had not been confined beyond the maximum permissible sentence for his underlying crime, it would not entertain his arguments regarding "whether the lack of periodic judicial review can be justified *after* the expiration of the period of confinement equal to the maximum prison term that [Petitioner] otherwise might have received for the underlying crimes." *Id.* at 42 (emphasis in original).

In July 1984, Petitioner was released from custody on parole. (Petition at 6b.) Petitioner remained free until 1989, when he was taken into custody and charged with three felony counts of sexual exploitation of children. (*Id.*; Resp'ts' Resp. at 11; Pet'r's Br., Ex. 5 at 2 [8/8/2001 Order].) In 1990, Petitioner was convicted of three counts of sexual exploitation and one count of being a habitual offender and sentenced to two concurrent twenty-five year sentences and one consecutive twenty-five year sentence. (Pet'r's Br., Ex. 5 at 3 [8/8/2001 Order].) Additionally, Petitioner's parole in the 1977 case was revoked, and he was reincarcerated subject to the indeterminate CSOA sentence. (*Id.*, Ex. 5 at 4 [8/8/2001 Order].) Evidently, while his case was pending, Petitioner attempted to escape from jail. (*Id.*, Ex. 5 at 3 [8/8/2001 Order].) Petitioner was convicted of solicitation to aid escape and conspiracy to aid escape and sentenced to eight years in prison, to be served consecutively with the fifty-year sentence described above. (*Id.*) In short, Petitioner is now concurrently serving fifty-eight years on the 1990 sexual offense and escape convictions and an indeterminate period on the 1977 sexual offense conviction.

3

On February 18, 1992, Petitioner filed a post-conviction motion in Boulder County District Court, in which he alleged that he had received ineffective assistance of counsel in his 1977 case. (Resp'ts' Resp., Ex. 7 at 1 [2/18/92 Mot. for Post-Conviction Relief].) The district court dismissed Petitioner's motion as untimely. (Answer to Show Cause Order at 7–8 [filed Sept. 24, 1997] [hereinafter "Answer"].) Petitioner appealed the decision, and the Colorado Court of Appeals remanded the case, directing the lower court to give Petitioner an opportunity to establish any applicable statutory exceptions to the time-bar on his motion. (*Id.*, Ex. A at 1–2 [4/20/1995 Order].) On remand, the trial court found that Petitioner had failed to demonstrate justifiable excuse or excusable neglect in filing his motion so late. (*Id.*) The trial court again denied Petitioner's motion and Petitioner again appealed the trial court's decision. (*Id.*, Ex. A [4/20/1995 Order].) In 1995, the Colorado Court of Appeals affirmed the trial court's decision. (*Id.*)

On June 20,1997, Petitioner, *pro se*, filed the petition for a writ of habeas corpus presently before this court. (Petition.) Petitioner argues he is being held unlawfully for three reasons: (1) sentencing under the CSOA violated his constitutional rights to equal protection and due process; (2) he was denied effective assistance of counsel in his 1977 case; and (3) he has been held in custody and "denied liberty for a crime he has not yet committed." (*Id.* at 5–9.) Although Petitioner describes his petition as containing three claims, the first claim contains several additional points, which require some unpacking. Petitioner argues that his sentencing under the CSOA violates equal protection and due process because: (1) it denies periodic judicial review of the justification for continued confinement; (2) it has caused him to serve a longer sentence than

4

the maximum he otherwise would have served under the law; (3) it has caused him to be re-incarcerated after his parole in 1984 without any further judicial finding as to whether he is a danger to society; and (4) the court's 1977 finding that he was dangerous to society was arbitrary and unsupported by the factual record in this case.  (*Id.* at 6b.)  On July 25, 1997, this court issued an order to show cause why the case should not be dismissed, given its untimeliness.  (Order [filed July 25, 1997].)  On August 8, 1997, Petitioner filed an answer to the court's order, in which he explained that his untimeliness was due to an inability to send outgoing mail that was beyond his control.  (Answer to Order to Show Cause [filed Aug. 8, 1997].)  On August 12, 1997, this court vacated its initial order and issued an order to show cause why the petition should not be granted.  (Order [filed Aug. 12, 1997].)

On September 24, 1997, Respondents answered the court's order to show cause.  (Answer.)  Respondents asserted that Petitioner's claim for ineffective assistance of counsel was time-barred by the statute of limitations.  (*Id.* at 12.)  Respondents asserted further that Petitioner's claims concerning due process and equal protection violations were procedurally defaulted, but conceded that, given liberal construction, Petitioner might not have exhausted his remedies in state court as to his argument concerning periodic judicial review.[1]  (*Id.* at 13–17.)  On February 18, 1998, Petitioner, *pro se*, filed a Traverse to Respondents' answer.  (Pet'r's

---

[1] Respondents opined that Petitioner's claim concerning his being "denied liberty for a crime he has not yet committed" was essentially identical to his claim for violation of due process and equal protection concerning periodic judicial review.  (Answer at 17.)  I agree.

Traverse [filed Feb. 18, 1998].)  On the same date, this court appointed counsel for Petitioner. (Order [filed Feb. 18, 1998].)

On March 26, 1999, Petitioner, through counsel, moved the court to hold his case in abeyance to allow him to pursue his unexhausted claims in state court.  (Mot. to Hold Case in Abeyance [filed Mar. 26, 1999].)  On April 12, 1999, Respondents objected to Petitioner's motion, but only to the extent Petitioner sought abeyance for any other reason than to exhaust his claims in state court.  (Resp'ts' Resp. in Partial Opp'n and Partial Non-Opp'n to Pet'r's Mot. to Hold in Abeyance [filed Apr. 12, 1999].)  On July 1, 1999, the magistrate judge recommended that this court grant Petitioner's motion.  (Recommendation of United States Magistrate Judge Bruce D. Pringle [filed July 1, 1999].)  On July 8, 1999, this court accepted the recommendation, granted Petitioner's motion, and administratively closed the case with leave to reopen for good cause.  (Order Accepting Magistrate Judge's Recommendation [filed July 8, 1999].)

Petitioner subsequently set about exhausting his remedies in state court.  On February 16, 2001, Petitioner filed a motion for post-conviction relief in Boulder County District Court. (Resp'ts' Resp., Ex. 1 [2/16/2001 Mot.].)  Petitioner argued that: (1) the lack of periodic judicial review of his continued detention denied him due process and equal protection; (2) judicial determination, rather than determination by a jury, that he posed a threat of danger to the public and was thus a proper subject for sentencing under the CSOA denied him equal protection; and (3) failure of the parole board to hear his case violated his due process rights.  (*Id.*)  On August 8, 2001, the district court found that Petitioner's due process claims were not ripe, reasoning it was "inconceivable that the Department of Corrections would parole [Petitioner] on one case on

6

which he already violated his parole [] while keeping him in prison until at least his parole eligibility date in 2016. . . ." (Pet'r's Br., Ex. 5 at 6 [8/8/2001 Order].) The court held that Petitioner would suffer no actual injury and the controversy in question would not become live until 2016. (*Id.*)

On June 26, 2002, Petitioner appealed the district court's decision. (Resp'ts' Resp., Ex. 2 [6/26/2002 Opening Br.].) On October 23, 2003, the Colorado Court of Appeals affirmed the lower court's decision. (Pet'r's Br., Ex. 6 [10/23/2003 Order].) The appellate court found that Petitioner's post-conviction motions were time-barred. (*Id.*, Ex. 6 at 5 [10/23/2003 Order].) The court emphasized that although Petitioner had served ten years of his sentence — and therefore arguably had standing to challenge his continued confinement — by 1993, he did not file his post-conviction motion until February 2001. (*Id.*) The court found that Petitioner did not establish that this seven-year delay in filing was due to justifiable excuse or excusable neglect. (*Id.*) The appellate court also dismissed Petitioner's claims concerning: (1) judicial determination of dangerousness as legally baseless; and (2) lack of annual parole board review as non-cognizable under the law. (*Id.*, Ex. 6 at 7 [10/23/2003 Order].) Petitioner unsuccessfully petitioned the Colorado Supreme Court for a writ of certiorari on the appellate court's decision. (Resp'ts' Resp., Ex. 5 [7/6/2004 Order Denying Certiorari].)

On December 29, 2004, Petitioner, *pro se*, filed a motion to reopen this case for good cause. (Mot. to Reopen Action for Good Cause [filed Dec. 29, 2004].) Subsequently, on June 30, 2005, Petitioner, through counsel, filed an unopposed motion to reopen the case. (Unopposed, Renewed Mot. to Reopen Administratively Closed Case [filed June 30, 2005].) On

July 1, 2005, this court granted the motions. (Order Granting Mots. to Re-Open Administratively Closed Case [filed July 1, 2005].) On November 3, 2005, Petitioner filed a brief in support of his habeas petition. (Pet'r's Br.) Petitioner asserts that he has abandoned some of his previous arguments, and now "challenges only" his sentencing and "continued incarceration under the CSOA, beyond what he could otherwise have served on a [c]lass [four] felony, without judicial review."[2] (*Id.* at 2.) On December 15, 2005, Respondents filed a brief in response. (Resp'ts' Resp.) On February 16, 2006, Petitioner filed a reply brief in support of his petition. (Reply to Resp'ts' Br. in Resp. [filed Feb. 16, 2006] [hereinafter "Pet'r's Reply].) This matter is fully briefed.

## ANALYSIS

### 1. *Evaluation of Claims*

Petitioner argues that: (1) he is improperly detained on a continuing basis without periodic judicial review; and (2) he was improperly sentenced under the CSOA due to ineffective assistance of counsel. (Pet'r's Br.) I address Petitioner's claims in turn.

#### a. *Lack of Periodic Judicial Review: Equal Protection and Due Process Violations*

Petitioner argues that his continued confinement beyond the time he would have served on the class four felony of which he was convicted — without a present finding of dangerousness and without periodic judicial review — violates due process and equal protection. (Pet'r's Br. at 16.) More specifically, Petitioner argues that his confinement beyond the ten years he would have

---

[2] As will be seen, despite this contention, Petitioner also challenges the effectiveness of his 1977 counsel. (Pet'r's Br. at 2, 6.)

served as a maximum sentence is based on the rationale of protection of the public. (*Id.*) Petitioner asserts that this rationale is: (1) dependent on a finding that he poses a threat of danger to the public; and (2) analogous to the rationale supporting confinement of civilly committed individuals and committed individuals who have been acquitted of crimes for reason of insanity. (*Id.*) Therefore, according to Petitioner: (1) as a matter of equal protection, he cannot be subjected to different release standards than the aforementioned committed individuals; and (2) as a matter of due process, he cannot be confined absent appropriate procedures to determine that he still poses a threat of danger to the public. (*Id.* at 16–17.) Respondents counter that Petitioner's claim is not a proper subject for federal habeas review because: (1) the Colorado Court of Appeals properly held in 2003 that Petitioner's claim was procedurally defaulted; (2) Petitioner did not exhaust his claim by presenting it to the Colorado Supreme Court in 1985; and (3) Petitioner's claim is not ripe and therefore not justiciable. (Resp'ts' Resp. at 20–44.) Respondents argue further that even if Petitioner's claim is justiciable, it must fail on the merits because Petitioner is not similarly situated to the committed individuals that his claim contemplates. (*Id.*) I need only address the issues of exhaustion and procedural bar.

### *i. Claim Exhaustion*

Petitioner argues that this court may address the merits of his periodic review claim because he properly exhausted the claim in state court and he can overcome the time-bar previously imposed in his case. (Pet'r's Br. at 25–30.) Petitioner maintains that: (1) he exhausted his claim by bringing it before the Colorado Supreme Court in 1985; and (2) the time-bar that the

Colorado Court of Appeals imposed in 2003 was unexpected and is thus unenforceable. (*Id.*) I am not so convinced.

First, Petitioner argues that he exhausted his claim by bringing it before the Colorado Supreme Court in 1985, even though the court opted not to analyze it. (*Id.* at 25–27.) The habeas statute generally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006) (citing 28 U.S.C. §§ 2254[b][1], [c] [2006]). This rule of comity prevents the "unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (citation and internal quotation marks omitted). Consequently, a state prisoner "is generally barred from obtaining federal habeas relief unless the prisoner has properly presented his or her claims through one 'complete round of the State's established appellate review process.'" *Woodford*, 126 S. Ct. at 2387 (quoting *O'Sullivan*, 526 U.S. at 845).

Here, Petitioner takes issue with the Colorado Supreme Court's 1985 holding that his claims were not ripe because he had not been "confined beyond the maximum permissible sentence for his underlying crime." *Kibel*, 701 P.2d at 42. Recognizing that he was incarcerated in 1977, Petitioner does not dispute that he had not been in prison for ten years in 1985. (Pet'r's Reply at 3–4.) Instead, Petitioner argues that his claim was timely before the Supreme Court, and therefore should be considered exhausted, because "he would have been released in July 1982 with good-time credits he would have earned." (Pet'r's Br. at 25.) Petitioner is mistaken. Prior to July 1, 1979, good time credits entitled a prisoner to an earlier date of parole eligibility, not an

10

earlier date of release or mandatory parole. *See Martinez v. Furlong*, 893 P.2d 130, 131 (Colo. 1995) (noting that "[i]nmates serving prison sentences for crimes committed before July 1, 1979" could receive good time, trusty time, and meritorious time credits, but those "credits earned merely determined the date on which the inmate became eligible for parole"); *Vashone-Caruso v. Suthers*, 29 P.3d 339, 341 (Colo. Ct. App. 2001) (holding that "for crimes committed before July 1, 1979, the [Department of Corrections] must calculate an inmate's earliest possible parole eligibility date" by subtracting any good time, trusty time, and meritorious time credits from the composite sentence). Because parole was discretionary, Petitioner cannot establish definitively that he would have been released in July 1982. *See Martinez*, 893 P.2d at 131 (noting that "the Parole Board had complete discretion to grant or deny parole"). Consequently, Petitioner's argument that the claim was timely before the Colorado Supreme Court is unavailing. In accord with the foregoing, I find that Petitioner did not exhaust his claim by presenting it to the Colorado Supreme Court in 1985. Therefore, federal habeas review based on such purported exhaustion is not proper.

    *ii.*   **Procedural Bar**

Alternatively, Petitioner argues that habeas review is proper based on his bringing the claim before the Colorado Court of Appeals in 2003. (Pet'r's Br. at 28–30.) The Colorado Court of Appeals held that Petitioner completed ten years of confinement and had standing to pursue his periodic judicial review claim "no later than August 31, 1993." (*Id.*, Ex. 6 at 5 [10/23/03 Order].) The court held further than because Petitioner filed his claim in "February 2001, more than seven years after he first attained standing to do so," and did not establish

justifiable excuse or excusable neglect, his claim was untimely pursuant to Colorado Revised Statutes section 16–5–402.[3] (*Id.*) Petitioner contends that because his claim is one that recurs periodically, it is likely not subject to the statute of limitations; hence, the Colorado Court of Appeals "unexpectedly applied" the time-bar to his claim. (Pet'r's Reply at 11–13.) Petitioner argues that because it was "unexpectedly applied" and thus "inadequate" and "unenforceable," the time-bar cannot serve to prevent federal habeas review by this court. (Pet'r's Br. at 28–30.)

Pursuant to the "adequate and independent state procedural rule," federal habeas review is generally inappropriate where a petitioner's claim has been procedurally defaulted in state court absent cause, prejudice, or a showing of a miscarriage of justice. *Walker v. Att'y Gen.*, 167 F.3d 1339, 1344 (10th Cir. 1999). A procedural rule is independent if it is based upon state law, rather than federal law.[4] *Anderson v. Att'y Gen.*, 342 F.3d 1140, 1143 (10th Cir. 2003) (citing *English v. Cody*, 146 F.3d 1257, 1259 [10th Cir. 1998]). A procedural rule is adequate if it was "'firmly established and regularly followed by the time as of which it is to be applied.'" *Id.* (quoting *Walker*, 167 F.3d at 1344). In determining whether the rule was firmly established and regularly followed, courts look to the time of the purported procedural default. *Id.*

In Petitioner's case, the Colorado Court of Appeals found that the three-year statute of limitations ran from August 1993 until August 1996. (Pet'r's Br., Ex. 6 at 5 [10/23/03 Order].)

---

[3]Section 16–5–402 imposes a three-year statute of limitations to bring collateral attacks upon trial judgments absent justifiable excuse or excusable neglect. Colo. Rev. Stat. § 16–5–402(2)(d) (2006).

[4]In Petitioner's case, the Colorado Court of Appeals expressly based its decision on Colorado state law, clearly satisfying this factor. (Pet'r's Br., Ex. 6 at 5 [10/23/03 Order].)

In 1995, the Tenth Circuit expressly found "no uneven application of [section] 16–5–402(2)(d) by the Colorado courts across the vast majority of cases." *Klein v. Neal*, 45 F.3d 1395, 1398 (10th Cir. 1995) (citation and internal quotation marks omitted). Given these facts, I find that section 16–5–402, which became effective in 1984, was firmly established and regularly followed in 1996, and is thus an adequate rule. *See People v. Fagerholm*, 768 P.2d 689, 692 (Colo. 1989) (outlining legislative history of section 16–5–402).

Finally, Petitioner's argument that the court "unexpectedly applied" the rule is disingenuous. Petitioner argued before both the Boulder District Court and the Colorado Court of Appeals that section 16–5–402 ought not apply because: (1) he was challenging an illegal sentence; and (2) given that his claims were not ripe within three years of his conviction, justifiable excuse or excusable neglect excepted him from the statute. (Pet'r's Br., Ex. 5 at 5 [8/3/2001 Order], Ex. 6 at 5–6 [10/23/2003 Order].) Petitioner's prior briefing of the issue belies his argument before this court. Petitioner clearly anticipated the possibility of application of section 16–5–402. Thus, the application of the statute is better characterized as "unfavorable" to Petitioner, rather than "unexpected" by him. In accord with the foregoing, I find that the Colorado Court of Appeals relied on an adequate and independent state procedural rule in barring Petitioner's claim. Therefore, because Petitioner has not adequately established cause, prejudice, or miscarriage of justice, the claim is not subject to federal habeas review. *Walker*, 167 F.3d at 1344.

### b.     *Ineffective Assistance of Counsel*

Petitioner also asserts that ineffective assistance of counsel led to his sentence under the CSOA. (Pet'r's Br. at 31–49.) Perhaps recognizing that federal habeas review of his ineffective assistance of counsel claim would be barred because the Colorado Court of Appeals held in 1995 that his ineffective assistance claim was time-barred, Petitioner takes a circuitous approach in his petition currently before the court. *See* Colo. Rev. Stat. § 16–5–402 (2006) (setting time limit for collateral attacks). In short, Petitioner argues that he is innocent of his CSOA sentence because he never posed a threat of harm to the public. (Pet'r's Br. at 31–49.) Petitioner contends that: (1) ineffective assistance of counsel tainted his statements and elicited his acquiescence to sentencing under the CSOA; and (2) his tainted statements and acquiescence undermine the already weak proof the court relied on in finding that Petitioner was a proper candidate for CSOA sentencing. (*Id.*) Petitioner asserts that given his actual innocence, application of the state procedural bar to his ineffective assistance would be a miscarriage of justice, and therefore this court should address his claim. (*Id.*)

At the outset, I note that the parties spill much ink over whether the actual innocence exception exists for the CSOA, especially given that Petitioner concedes his guilt as to the underlying crime. (Resp'ts' Resp. at 47–52; Pet'r's Reply at 21–24.) I assume without deciding that the actual innocence exception applies to CSOA sentencing, because it requires a separate and distinct determination from the guilt of the underlying crime. *See Sanchez*, 520 P.2d at 753 (noting that under the CSOA, "[o]nly if the court finds that the defendant is a threat to the public, has it the power to commit the defendant for an indeterminate term"). Moreover, I note the

veritable gordian knot that Petitioner's circular arguments create. Petitioner argues that he "did not protest CSOA sentencing and challenge the proof [the sentencing court relied upon] because of bad advice from his attorneys." (Pet'r's Br. at 31.) Such is to say, Petitioner's actual innocence, the very thing that provides an avenue for this court to hear his ineffective assistance claim, is based in part upon the ineffective assistance of counsel Petitioner alleges he received.

To come within the "very narrow exception" of a fundamental miscarriage of justice, a petitioner must present "a colorable showing" of actual innocence. *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) (citation and internal quotation marks omitted). Significantly, "an adequate showing of the applicability of this exception does not establish an entitlement to relief; rather, such a showing is merely a gateway through which a habeas petitioner must pass to have his otherwise barred claim considered on the merits." *Id.* (citation and internal quotation marks omitted). Indeed, the exception is generally intended for those situations "where the State has convicted the wrong person of the crime" or where "it is evident that the law has made a mistake." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "To be credible," a claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The petitioner must then show "a fair probability that, in light of all the evidence, . . . the trier of the facts would have entertained a reasonable doubt of his guilt." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 n.17 (1986) (citation and internal quotation marks omitted).

Before turning to Petitioner's arguments, it is worth noting that the CSOA statute requires that any defendant to be sentenced thereunder must be examined by two psychiatrists. Colo. Rev. Stat. § 18–1.3–908 (2006). The examining psychiatrists opine on "whether the defendant, if at large, constitutes a threat of bodily harm to members of the public." (*Id.*) In Petitioner's case, one psychiatrist opined that Petitioner might pose a danger to the public based on his admission that he would have difficulty refraining from sex with young boys; the other psychiatrist opined that Petitioner did not pose a threat of bodily harm to the public, but was nonetheless a suitable candidate for sentencing under the CSOA. *See Kibel*, 701 P.2d at 41. Petitioner argues that these psychiatrists' opinions served as weak evidence to support the court's determination of his suitability for CSOA sentencing. (Pet'r's Br. at 35–41.)

Further, Petitioner argues that he is innocent of his CSOA sentence because "new evidence, in the form of [Petitioner's] allegations, . . . would probably dissuade a factfinder" from finding that he indeed posed a threat of danger to society. (*Id*. at 34.) Petitioner's arguments center on his sworn declaration, filed in November 2005, that he was less than fully forthcoming in his interviews with the court-appointed psychiatrists who examined him in connection with the determination. (Decl. of Floyd David Slusher ¶ 4 [filed Nov. 23, 2005].) Petitioner asserts that he did not fully explain his beliefs "regarding benefits of therapy and the likelihood that [he] would not re-offend" and "did not stress, as [he] otherwise would have, that legal restraints made it very unlikely [that he] would re-offend." (*Id.*) In essence, Petitioner extrapolates that had he made these statements, the court-appointed psychiatrists would have come to different conclusions and

changed their reports to the court. Petitioner implicitly contends that had the reports been different, the court's determination could have been different.

Neither Petitioner's statements in his declaration nor his attenuated argument in connection therewith can serve to establish his actual innocence. First, the notion that Petitioner's statements would have changed the psychiatrist's reports is highly speculative, which necessarily discounts the reliability of the evidence Petitioner presents. *See Schlup*, 513 U.S. at 324 (underscoring requirement of reliable evidence to establish innocence). Speculation aside, Petitioner's argument must fail because the determination of whether a defendant poses a threat of danger is purely judicial. *See Ray v. People*, 415 P.2d 328, 330 (Colo. 1966) ("[T]he court is the one imposing sentence and not the psychiatrist."). Indeed, "the psychiatric report is not the sole gauge by which to determine the character of the sentence." *Trueblood v. Tinsley*, 366 P.2d 655, 657 (Colo. 1961) (interpreting older version of the CSOA). In making its determination of a defendant's dangerousness, a trial court must consider all material information before it, including the probation report as well as relevant information from other sources. *Ray*, 415 P.2d at 330. As the Colorado Supreme Court has noted, "[t]o hold otherwise would empower the psychiatrist to impose the sentence through his report. It was not intended that the psychiatrist thus become vicariously the judge under the statute, or otherwise limit or restrict the court in the exercise of its judgment." *Id.* Here, the sentencing court expressly considered the probation report and offered the prosecutor, Petitioner's counsel, and Petitioner himself the opportunity to be heard at the sentencing hearing. (Pet'r's Br., Ex. 3 at 2–6 [9/16/1977 Transcript].) Further, the sentencing judge signed and considered the affidavit for the arrest warrant, which contains accusations that

Petitioner threatened to kill his victims.[5]  Given the nature of the evidence before the sentencing court and the nature of the court's decision itself, even if Petitioner could establish that his omitted statements would have changed the psychiatrists' reports (which he cannot), this change still would not amount to a colorable argument establishing a fair probability that the sentencing court would have entertained a reasonable doubt as to whether Petitioner posed a danger to society.  *See Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (citation omitted) ("A criminal defendant is required to provide evidence that does more than simply undermine the finding of guilt against him or her.").

   Petitioner's remaining argument is similarly deficient.  Petitioner asserts that had the court known he only acquiesced to CSOA sentencing because of statements made by his counsel, "it may well have viewed differently the question of whether the CSOA's threshold standard was met." (Pet'r's Br. at 41.)  Petitioner, without basis, further asserts that had the court known of his tainted acquiescence, it "probably" would have more closely examined the statements Petitioner's examining psychiatrists attributed to him and discounted them.  (*Id.* at 42.)  Petitioner essentially asserts that in the absence of his acquiescence, the court would have paid more attention to his case.  Again, Petitioner's speculation cannot serve as reliable evidence to establish his actual innocence, and merely undermining the court's determination is not sufficient.  *Phillips*, 182 F.3d at 774.  Consequently, I find that Petitioner has fallen short of making a sufficient

---

[5]Petitioner now denies making such threats and asserts that several statements in the affidavit are false.  (Second Decl. of Floyd David Slusher ¶¶ 3–6 [filed July 31, 2006].)  Petitioner's current statments cannot serve to change the nature of the evidence before the sentencing court in making its CSOA determination of dangerousness.

showing of actual innocence to overcome the procedural default on his ineffective assistance claim, which I therefore decline to analyze.

*2.    Conclusion*

In accord with the foregoing, it is therefore ORDERED that Petitioner's petition for a writ of habeas corpus (# 2) is DENIED.

Dated this 8th day of November, 2006.

                                        BY THE COURT:

                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        United States District Judge